UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GRAEBEL/LOS ANGELES MOVERS, INC., a California corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 04 C 8282 |
| COSTELLO JOHNSON and EUNITA JOHNSON, | ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Graebel/Los Angeles Movers, Inc. ("Graebel"), is a California company that stores and installs office furniture. Husband and wife Defendants, Costello and Eunita Johnson, are the sole shareholders and corporate officers of Corporate Office Systems, Inc. ("COS"), a company that supplies, installs and services office furniture. COS agreed to supply furniture for two corporate customers, furniture which Graebel agreed to store and eventually install. COS paid Graebel only a portion of the amount that Graebel charged for its services under this arrangement, and on January 20, 2004, Graebel sued COS. Graebel won a stipulated judgment in the amount of unpaid invoices plus pre-judgment interest, but COS has not satisfied the judgment—indeed, Graebel alleges that COS is insolvent. This case concerns whether Graebel may enforce COS's debt against Defendants.[1]

---

[1] There is complete diversity between Plaintiff Graebel, a California corporation with its principal place of business in Fontana, California, and Defendants Costello and Eunita Johnson, both Michigan citizens. *See* Compl. ¶¶ 1–3. The amount in controversy exceeds $75,000, exclusive of interest and costs. *Id*. at ¶ 4. Venue is proper under 28 U.S.C. 1391(a)(2) because a substantial part of the events giving rise to the claim occurred in this District. *Id*. at ¶ 5.

## FACTUAL BACKGROUND

The following facts are taken from Graebel's complaint and opposition memorandum. On a motion to dismiss, the court accepts all well-pleaded allegations as true. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977–78 (7th Cir. 1999). Facts asserted in Graebel's opposition memorandum are relevant to the extent that they can be proven consistent with the allegations of the complaint. *See Dausch v. Ryske*, 52 F.3d 1425, 1427 n.3 (7th Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

As memorialized in purchase orders dated October 2002 through May 2003, COS agreed to supply office furniture for two corporate customers, A.C. Nielsen and Baxter Health Care ("Baxter"), furniture which Graebel agreed to store and eventually install.[2] Compl. ¶ 12. Pursuant to the parties' understanding and course of dealing, A.C. Nielsen and Baxter paid COS for the furniture, including the storage and installation, and COS agreed, in turn, to pay Graebel for its services. *Id.* at ¶ 13. Invoices issued by Graebel to COS for these services totaled $508,552.17. *Id.* ¶ 16. A.C. Nielsen and Baxter paid COS "at least that much" for the services that Graebel and COS rendered from October 2002 through May 2003. *Id.* at ¶ 15. COS paid Graebel only $180,899.43. *Id.* at ¶ 17.

On October 1, 2002—shortly before COS issued its first purchase order to Graebel—the Illinois Secretary of State involuntarily dissolved COS. *Id.* at ¶ 22. The Secretary of State reinstated COS on or about June 18, 2003 after Defendants filed "appropriate corporate documents." *Id.* at

---

[2] It is unclear from Graebel's complaint which party negotiated with A.C. Nielsen and Baxter, nor is the court certain whether Graebel had any contract with these companies. Both customers agreed to pay COS, Compl. ¶ 13, which suggests that COS, as furniture supplier, subcontracted storage and installation services to Graebel.

2

¶ 23. Defendants did not notify Graebel that COS was dissolved, and instead held COS out as a corporation in good standing throughout their business dealings with Graebel. *Id.* at ¶ 22.

Graebel alleges that at all times relevant to this lawsuit Defendants were "intimately involved" in COS's business affairs. *Id.* at ¶¶ 18–21. In 2001, Defendants secured a $2,000,000 commercial loan by mortgaging two of their personal residences and executing personal repayment guaranties. *Id.* at 19. In a letter dated June 19, 2003, Costello Johnson notified Graebel that COS was "reviewing all of its business options due to financial and operational issues." *See* Johnson/Graebel Letter, Ex. C to Graebel's Compl. The letter further stated that COS would review its accounts payable, and prioritize outstanding debts, after satisfying its commercial loan. *Id.* Defendants sold one of their personal residences to pay COS' lender, thereby avoiding liability on their personal guaranties and foreclosure on another mortgaged property. Compl. at ¶ 21. Graebel alleges that throughout this period Defendants were drawing an "excessive salary" of $200,000, combined. *See* Pl.'s Resp. in Opp'n to Def.'s Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (hereinafter "Graebel Opp'n"), at 3.

On January 20, 2004, Graebel sued COS under "account stated" and *quantum meruit* theories in the United States District Court for the Northern District of Illinois, Case No. 04C 0411. *See* Prior Complaint, Ex. B to Defs. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (hereinafter "Defs. Motion to Dismiss"), at ¶ 41–51. Graebel sought $327,652.84—the invoiced amount then outstanding—plus pre-judgment interest. *Id.* at ¶ 41, 51. On July 8, 2004, the district court entered a stipulated judgment for $327,652.84 plus $16,246.12 in pre-judgment interest. Compl. at ¶ 28. The Final Judgment Order states that it is "immediately enforceable, and final in all respects." Final Judgment Order, Ex. C to Defs. Motion to Dismiss. On

October 1, 2004, the Illinois Secretary of State again involuntarily dissolved COS. *See* Graebel Opp'n at 2–3. COS has failed to make any payments on the outstanding judgment and Graebel alleges that the company is now insolvent. *Id*. at 3.

Graebel filed the current action against Defendants on December 23, 2004. Count I of Graebel's complaint, entitled "Individual Liability for Debt of Dissolved Corporation," alleges that Defendants, as COS's officers, directors and primary shareholders, are jointly and severally liable for debts that COS incurred "during the period of dissolution" under the Illinois Business Corporation Act of 1983. Compl. ¶¶ 29–45. Count II, entitled "Unjust Enrichment," alleges that Defendants have unfairly benefitted at Graebel's expense. *Id*. at ¶¶ 46–54. Graebel requests $327,652.84 plus pre-judgment expenses under both counts. *Id*. at ¶¶ 29, 54.

## DISCUSSION

Defendants move to dismiss the Graebel's complaint pursuant to FED. R. CIV. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the plaintiff's complaint, not to decide its merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990) (citing *Triad Assoc., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989)). On a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Jackson,* 176 F.3d at 977–78. A motion to dismiss will be granted only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitles him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957). Stated differently, a complaint will survive a Rule 12(b)(6) motion if it "narrates an intelligible grievance that, if proved, shows a legal entitlement to relief." *United States Gypsum Co. v. Indiana Gas Co.,* 350 F.3d 623, 626 (7th Cir. 2003) (citations omitted). Moreover, a litigant need not anticipate potential defenses in its complaint. *Id.* (denying motion to

4

dismiss predicated on issue preclusion and statute of limitations defenses). A litigant may, however, "plead itself out of court by alleging (and thus admitting) the ingredients of a defense." *Id.*

Defendants contend that the present lawsuit is barred by the *res judicata* and election-of-remedies doctrines. *See* Motion to Dismiss at 2. Graebel responds that under Illinois law an action to enforce a judgment against the shareholders of a judgment creditor is proper. Graebel Opp'n at 8. These arguments are addressed below.

**A.     Res Judicata**

*Res judicata* will bar the current lawsuit if Defendants satisfy the following elements: "(1) judgment on the merits in the earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action between both suits." *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 338 (7th Cir. 1995).[3] With respect to the second element, "[s]trict identity of the parties is not necessary to achieve privity." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 301 (7th Cir. 1985). Parties who "adequately represent the same legal interests" are in privity for *res judicata* purposes. *Id.* The cause of action in the second lawsuit is identical to the first if it is "based on the same, or nearly the same, factual allegations." *Brzostowski*, 49 F.3d at 339.

In this case, the first two *res judicata* elements are clearly satisfied. COS and Graebel—the party against whom Defendants assert *res judicata*—litigated their contract dispute to a final,

---

[3]     In this diversity action, the court applies the substantive law—including choice of law rules—of the forum in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Illinois, "the collateral estoppel or res judicata effect of a judgment is determined by the law of the jurisdiction where the judgment is entered." *Instituto Nacional de Comercializacion Agricola v. Cont'l Ill. Nat'l Bank & Trust Co.*, 858 F.2d 1264, 1271 (7th Cir. 1988). Because the prior action was litigated in federal court, this court applies the federal common law of *res judicata*. *See Tuteur Assoc., Inc. v. Taubensee Steel & Wire Co.*, 861 F. Supp. 693, 695–96 (N.D. Ill. 1994).

5

stipulated judgment. Compl. ¶ 28. A stipulated judgment is on the merits for *res judicata* purposes. *See In re Baker*, 74 F.3d 906, 910 (9th Cir. 1996) (citing *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 505–06 (1953)) ("For res judicata purposes, an agreed or stipulated judgment is a judgment on the merits."). Defendants are in privity with their closely-held corporation, COS, the defendant in the prior lawsuit. *See, e.g., Studio Art Theatre of Evansville, Inc. v. City of Evansville, Indiana*, 76 F.3d 128, 131 (7th Cir. 1996) (close relationship between plaintiff and the closely-held company sued in the first action weighs in favor of finding privity between the two parties); *Drexel Burnham Lambert Inc. v. Luzinski*, No. 89 C 3553, 1989 WL 152988, *4 (N.D. Ill. Nov. 14, 1989) ("When a person owns most or all shares in a corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest to be considered to be in privity with the corporation.") (applying Illinois law). The parties in the two lawsuits are, therefore, identical for *res judicata* purposes.

The more difficult question here is whether the current lawsuit involves the same cause of action as the first. The answer turns on how the court construes Graebel's complaint. Defendants point to the "invoices, purchase orders and other service receipts" that Graebel attached to its complaint and argue that Graebel seeks to relitigate the contract debt that was the subject of the first lawsuit. Motion to Dismiss at 6. Relying on *Drexel*, Defendants contend that this cause of action was litigated to a final judgment against COS and cannot be relitigated against the individual Defendants in this case. *See Drexel*, 1989 WL 152988, at *3–4 (An action against the shareholders of a corporation is barred by *res judicata* if it is based on the same facts as the previous lawsuit against the corporation.). Graebel asks this court to disregard *Drexel*, arguing that the court should be guided by the Seventh Circuit's decision in *Sea-Land Serv. v. Pepper Source*, 993 F.2d 1309 (7th Cir.

1993).  *See* Graebel Opp'n at 8, 11–12.  In *Sea-Land*, the Seventh Circuit allowed the plaintiff to pierce the corporate veil of a judgment debtor to reach the assets of the debtor's owner, as well as those of certain affiliated corporations.  *See Sea-Land*, 993 F.2d at 1311, 1313.  The *Sea-Land* court did not discuss or even mention the *res judicata* effect of the prior judgment.  *Sea-Land*'s holding is consistent with Illinois cases allowing plaintiffs to enforce judgments against the shareholders of judgment creditors.  *See, e.g.*, *Miner v. Fashion Enter., Inc.*, 342 Ill. App. 3d 405, 415, 794 N.E.2d 902, 912 (1st Dist. 2003).  Contrary to both parties' contentions, the court believes *Drexel* and *Sea-Land* can be harmonized.

*Drexel* must be understood within the context of the vague allegations made by the plaintiff in that case.  The plaintiff in *Drexel*, Drexel Burnham Lambert, Inc. ("Drexel"), obtained a default judgment against Innovative Investments ("Innovative").  *Drexel*, 1989 WL 152988, at *1.  When Innovative failed to satisfy the judgment, Drexel sued Innovative's "primary shareholder."  *Id*.  Because Drexel's legal theory in this second lawsuit was unclear, the court considered several possible interpretations of the complaint.  *Id*. at * 2 ("Apparently, the [prior] Kentucky judgment is to play some part in this new claim, however, neither plaintiff's complaint nor its response to this motion have provided this court with any clue as to what this claim is based on or what role the [prior] Kentucky judgment is to play.").  First, the court construed the complaint to assert "a cause of action identical to that brought" in the first lawsuit, but brought against the defendant in his "individual capacity."  *Id*.  Under this interpretation of the complaint, the court concluded that the lawsuit was barred by *res judicata*.  *Id*.  Drexel sought damages in the amount of the prior judgment "based on the same facts and injury which gave rise to the judgment in the previous action."  *Id*. at *3.  Piercing the corporate veil is an equitable remedy, not a new cause of action.  *Id*. at *4–5.

7

Because Drexel chose not to pursue that remedy in the first lawsuit, it was barred from pursuing it in the second. *Id.* at *4[4]

Under a second interpretation, the *Drexel* court construed the complaint as an action to enforce the prior judgment, and not the contract claim on which that judgment was based, against the individual defendant. *Id.* at *6. Applying this interpretation of the complaint, the court held that Drexel had stated a claim for an action on the judgment. *Id.* A judgment-creditor may pursue a separate action for debt predicated on a prior judgment, even if the underlying claim that the plaintiff reduced to judgment could not be relitigated. *Id.* This second lawsuit is not barred by *res judicata* because an action to enforce a judgment is a new cause of action. *See Miner*, 342 Ill. App. 3d at 414, 794 N.E.2d at 912 ("[A] judgment is a new and distinct obligation of the corporation which differs in nature and essence from the original claim.") (citation and internal quotations omitted).

The *Drexel* court's distinction between the cause of action underlying a judgment, and the judgment itself, is further explicated in *Miner*. The plaintiff in *Miner* sought to enforce a prior judgment by piercing the judgment-debtor's corporate veil to reach the debtor's parent corporation. *Id.* at 412–13, 794 N.E.2d at 910. The plaintiff also sought to recover unpaid rent which had not been included in the default judgment. *Id.* With respect to the prior judgment, the court held,

---

[4] Defendants also rely on *Grisanzio v. Bilka*, 158 Ill. App. 3d 821, 511 N.E.2d 762 (2d Dist. 1987). Motion to Dismiss at 5–6. The *Grisanzio* court's decision is consistent with this first interpretation of the *Drexel* complaint. In *Grasanzio*, plaintiff Grisanzio obtained a default judgment against First Edition, Inc. with respect to unpaid compensation under preincorporation contracts. *Id.* at 823, 511 N.E.2d at 763. Grasanzio subsequently sued the corporation's promoters under Illinois' Business Corporation Act. *Id.* at 822, 511 N.E.2d at 763. The court concluded that the "unpaid compensation is the foundation of both suits," and held that the second lawsuit was barred by *res judicata*. Id. at 828–29, 511 N.E.2d at 767.

8

consistent with *Drexel*, that the plaintiff's lawsuit against the individual defendant was not barred by *res judicata*. *Id.* at 415, 794 N.E.2d at 912. Under Illinois law, "a judgment creditor may choose to file a new action to pierce the corporate veil of a judgment debtor in order to hold individual shareholders and directors liable for a judgment against the corporation." *Id.* With respect to the unpaid rent, the court distinguished (1) rent which came due after the default judgment; and (2) rent which came due during the pendency of the previous lawsuit but which was not included in the default judgment. *Id.* at 418, 794 N.E.2d at 914–915. The plaintiff's claim for the former was not barred because a new cause of action arose as each subsequent rent cycle expired. *Id.* at 418, 794 N.E.2d at 914. The plaintiff's claim for the latter was barred by *res judicata* because the plaintiff could have included that rent in the default judgment. *Id.* at 418, 794 N.E.2d at 914–15. *See also Drexel*, 1989 WL 152988, at *3 (Under the court's first interpretation of Drexel's complaint, Drexel's alter ego theory "could have been raised" in the first litigation "and, therefore, merged into the plaintiff's judgment.").

Applying this rationale to Graebel's complaint, the court concludes that Count I is barred by *res judicata*. In the first lawsuit, Graebel obtained a stipulated judgment against COS in the amount of the unpaid invoices for the Baxter and A.C. Nielsen projects. *See* Compl. ¶ 28. This same debt is the basis of Graebel's current statutory claim for "debts and liabilities" incurred by Defendants while COS was dissolved. *Id.* at ¶ 42. Graebel could have brought this claim against the Defendants in the previous lawsuit.[5] *See Donovan*, 778 F.2d at 301 ("[A] final judgment on the

---

[5] Indeed, in a November 25, 2003 letter to COS's attorney, Graebel's attorney argued that the Defendants were "jointly and severally liable to Graebel for the $327,652.84 in unpaid invoices" under the Illinois Business Corporation Act. *See* Morrison/Greenblatt Letter, Ex. D to
(continued...)

9

merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action.")(citation and internal quotations omitted)(emphasis added). Graebel chose not to sue Defendants at that time, and is now barred from relitigating the debt that was the subject matter of the first lawsuit. *Id.* Graebel cites *Miner* and argues that both its statutory and common law claims against the Defendants are predicated on additional facts concerning the Defendants' roles with respect to COS. Graebel Opp'n at 14–15. The portions of the *Miner* court's opinion that Graebel relies on concern the plaintiff's attempt to enforce its prior judgment and its claim for post-judgment rent. *See Miner*, 342 Ill. App. 3d at 415, 418, 794 N.E.2d at 912, 914. As previously discussed, the former is not barred by *res judicata* because the action on the judgment constitutes a new cause of action. *Id.* at 415, 794 N.E.2d at 912. The action to recover post-judgment rent is also a new cause of action. *Id.* at 418, 794 N.E.2d at 914. This second conclusion was not based, as Graebel contends, on the ground that new facts were required to establish "alter ego" liability. If that were so, then the action to recover rent that could have been included in the prior judgment would not have been barred. *Cf.*, *id.* at 418, 794 N.E.2d at 914–15 (*res judicata* barred plaintiff from suing the judgment debtor's parent corporation for rent that could have been included in the prior default judgment). The plaintiff's claim to recover post-judgment rent was a new cause of action because it was based on different operative facts pertaining to the new rent cycle, not because it was brought against different defendants. *Id.* at 418, 794 N.E.2d at 914. Graebel cannot avoid the *res judicata* effect of the prior judgment merely by presenting a new legal theory.

---

[5](...continued)
Graebel Compl., at 1–2. Yet Graebel elected not to name the Defendants in the first lawsuit.

With respect to Count II, the court concludes that Graebel's complaint states a claim to enforce the COS judgment against Defendants. To proceed on an action to enforce a judgment, the underlying judgment must "be one for a sum certain in money." *See Drexel*, 1989 WL 152988, at *6 (citing *Green v. Alton Telegraph Printing Co.*, 107 Ill. App. 3d 755, 763, 438 N.E.2d 203, 208 (5th Dist. 1982).[6] The judgment must, moreover, "be final and have been rendered by a court of competent jurisdiction." *Id*. Accepting the well-pled facts of Graebel's complaint as true, Graebel has stated a claim for an action on the COS judgment. The previous lawsuit was reduced to a final, stipulated judgment by a court of competent jurisdiction. *See* Final Judgment Order, Ex. C. to Motion to Dismiss. This judgment "establishes a sum certain which may serve as the underlying debt." *See Drexel*, 1989 WL 152988, at *6.

Defendants contend that the court should nevertheless dismiss Graebel's complaint because Plaintiff has not alleged that "COS cannot satisfy the judgment, or that COS is currently insolvent." See Def.'s Reply Mem. in Support of Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (hereinafter "Def.'s Reply"), at 5. Defendants argue, in essence, that Graebel has merely demonstrated that COS has not or will not satisfy the judgment, not that it cannot. *Id*. This argument is based on language in the *Drexel* opinion suggesting that a judgment-creditor "must establish some degree of necessity" before proceeding on an action to enforce a judgment. *See Drexel*, 1989 WL 152988, at *6. In this court's view, dismissal is not warranted on this basis. First, the *Drexel* court correctly points out that "Illinois courts had not directly addressed the

---

[6] A claim to enforce a prior judgment is governed by the law of the forum state. *See Drexel*, 1989 WL 152988, at *6 (An action on a judgment is "one for a debt, and as a new cause is governed by the law of the forum state, Illinois.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

11

requirement." *Id.* Subsequent Illinois cases have not expressly adopted this requirement. *See, e.g., Miner*, 342 Ill. App. 3d at 415, 794 N.E.2d at 912. Second, Graebel asserts in its opposition to Defendants' motion to dismiss that COS is insolvent. *See* Graebel Opp'n at 2–3. To the extent that Graebel is required by Illinois law to establish "some degree of necessity" to maintain an action on the COS judgment, Graebel has satisfied that requirement.[7]

## B. Piercing the Corporate Veil.

Although the court concludes that Graebel has stated a claim to enforce the judgment, it must nevertheless determine whether the Defendants may be liable for that judgment. *See Drexel*, 1989 WL 152988, at *6 (noting that Drexel could "[make] out its case" by satisfying the action-on-a-judgment elements *and* establishing the defendant's liability.).[8] Graebel contends that it has

---

[7] Defendants also argue that Graebel is barred from pursuing a remedy against Defendants under the election-of-remedies doctrine. See Motion to Dismiss at 8–9. When a plaintiff chooses between two or more inconsistent, coexisting remedies, the election-of-remedies doctrine estops the plaintiff from pursuing the other remedies in a subsequent lawsuit. *See Streams Condo. Assoc. v. Bosgraf*, 219 Ill. App. 3d 1010, 1015, 580 N.E.2d 570, 574 (2d Dist. 1991). The doctrine is "generally confined" to situations where "(1) double compensation is threatened, (2) plaintiff's conduct has misled defendant causing defendant to change his or her position in reliance upon it, or (3) the doctrine of *res judicata* applies." *Id.* Defendants rely exclusively on the *res judicata* effect of the prior judgment to establish the appropriateness of election of remedies. *See* Motion to Dismiss at 8. As previously discussed, *res judicata* does not apply with respect to Graebel's action to enforce the COS judgment against the individual Defendants. Nor is there any threat of double recovery, or showing that Defendants have been misled to their detriment. Moreover, the remedy Graebel seeks in this case is consistent with and, indeed, predicated upon, the remedy it pursued against COS in the first lawsuit.

[8] Graebel misreads *Drexel* to bar the plaintiff's "alter ego" theory with respect to its action on the COS judgment, and therefore asks the court to disregard *Drexel*. *See* Graebel Opp'n at 12. As previously discussed, Drexel's "alter ego" theory was barred to the extent that Drexel was attempting to relitigate the debt underlying the prior judgment. *See Drexel*, 1989 WL 152988, at *3. By contrast, the action on the judgment was a new cause of action, which Drexel could pursue against the individual defendants according to whatever legal theory—including "alter ego"—it
(continued...)

properly pleaded facts stating a claim to pierce COS's corporate veil. Defendants contend that Count II of Graebel's complaint, entitled "Unjust Enrichment," does not expressly plead common-law veil piercing. A complaint does not fail to state a claim simply because it does not specify a precise legal theory, however. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("[S]pecifying an incorrect [legal] theory is not fatal."). In light of the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the court concludes that Graebel has stated a claim for relief against the Defendants.

Under Illinois law, a plaintiff may pierce the corporate veil by demonstrating that (1) "there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist;" and (2) "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Sea-Land*, 993 F.2d at 1311 (quoting *Van Dorn Co. v. Future Chem. And Oil Corp.*, 753 F.2d 565, 569–70 (7th Cir. 1985) (internal quotations omitted). Defendants rely on an unpublished district court opinion and assert that Graebel's allegations do not state a claim to pierce COS's corporate veil. *See The Essex Real Estate Group, Ltd. v. River Works, L.L.C.*, No. 01 C 5285, 2002 WL 1822913, *5 (N.D. Ill. Aug. 7, 2002). In *Essex*, plaintiff agreed, in exchange for a finder's fee, to locate a lender to finance defendant River Works' renovation project. *Id.* at *1. The plaintiff alleged that River Works breached the contract by refusing to pay the finder's fee after River Works broke off negotiations with the lender that plaintiff had located. *Id.* The plaintiff then sued River Works and, among others, River Work's individual owners. *Id.* To support its claim against the owner defendants, plaintiff alleged only that owner defendants (1)

---

[8](...continued)
could ultimately prove on the facts of its case. *Id.* at 6.

owned River Works and "exercised such control . . . as to be and constitute alter egos;" and (2) received "substantial compensation." *Id.* at *5. In its reply brief, the plaintiff also alleged that the owner defendants had formed River Works and certain affiliated trusts to avoid unpaid taxes. *Id.* But the plaintiff did not allege that River Works could not satisfy a judgment for the unpaid finder's fee, nor did it attempt to create any other nexus between the alleged breach of contract and the defendants' alleged tax-evasion or their "substantial compensation." *Id.*

On a motion to dismiss, the court inquires only "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet*, 953 F.2d at 1078. Graebel, unlike the *Essex* plaintiff, has alleged that COS was inadequately capitalized. By June 2001, COS could not satisfy all of its creditors, *see* Compl. ¶ 20–21, yet Defendants continued to draw "excessive salaries." *See* Graebel Opp'n at 6. COS is now insolvent and unable to satisfy the stipulated judgment entered in the first lawsuit. *Id.* at 3. Graebel's complaint further alleges that Defendants disregarded corporate formalities by failing to file appropriate corporate documents with the Illinois Secretary of State's office. Compl. ¶ 22. After the Secretary of State dissolved the corporation, Defendants continued to hold COS out as a corporation in good standing. *Id.* Defendants contend that the "alter ego" cases that Graebel cites contained "much more severe facts" than Graebel has pled here. *See* Defs.' Reply at 9. On a motion to dismiss, however, this court does not decide the merits of the complaint. *See Gibson,* 910 F.2d at 1520. The plaintiff satisfies Rule 8(a) if the allegations are sufficient to allow the defendant to "understand the gravamen" of the complaint. *See Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (citation and internal quotations omitted). The court concludes that Graebel's allegations are sufficient under this liberal notice-pleading standard.

## CONCLUSION

The court grants Defendants' Motion to Dismiss with respect to Count I of Graebel's complaint, and denies Defendant's Motion to Dismiss with respect to Count II (9).

ENTER:

Dated: March 1, 2006

_____
REBECCA R. PALLMEYER
United States District Judge